418 So.2d 1 (1982)
Floyd ROOD
v.
Peter FINNEY, Jr. and United Press International, Incorporated.
No. 13023.
Court of Appeal of Louisiana, Fourth Circuit.
June 28, 1982.
Writ Denied October 8, 1982.
M. H. Gertler, New Orleans, for plaintiff-appellant.
Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Robert E. Winn and J. David Forsyth, New Orleans, and Baker & Hostetler, Bruce W. Sanford and Lee Levine, Washington, D. C., for defendants-appellees.
Before GULOTTA, GARRISON and BARRY, JJ.
GARRISON, Judge.
In August, 1979 plaintiff-appellant Floyd Rood filed this suit against United Press International (UPI) and Peter Paul Finney, Jr., a UPI staff reporter in New Orleans. Plaintiff sought $310,000.00 in damages for a statement printed in one version of a UPI news article, the original of which was written by Finney, concerning Rood's unusual fund raising activities. The particular version of the news story involved was one of several rewrites done by the Dallas regional office of UPI, which appeared in the Houston Chronicle on October 4, 1978. Mr. Rood, a professional golfer, had been involved in unique and well-publicized golf activities since the 1950's when he formed the "Floyd Rood Youth and Sports Foundation," a tax-exempt organization devoted to his youth assistance work. A major involvement of his, over these years, was "highway golf." In this activity, seeking substantial publicity for the project, Mr. Rood would embark on a cross-country tour, during the course of which he would hit golf balls across land and water. Money for the foundation would be raised from sponsors who would contribute a particular amount for each yard covered or who would purchase the golf balls used during the cross-country tour.
It was apparent that publicity was essential to this fund-raising operation. Rood employed advance men and public relations personnel to promote his activity in order to insure that he received the attention required in order to raise money for the fund. On one such golf tour, a clipping service counted over 350 newspapers reporting his *2 activities. Rood had appeared on television and radio shows, had been featured in national magazines, and had been the subject of a book. The news article at issue in this case was originally written by Finney on October 3, 1978, at the beginning of one of Rood's "highway golf" tours. The proceeds of this particular tour were going to be used to purchase trailers which would provide information concerning drug rehabilitation.
In connection with this tour, Finney interviewed Rood and subsequently typed his story into a video display terminal in the New Orleans office of UPI. Rood's many fund raising campaigns over the previous 20 years were discussed. The news story stated that Rood was about to begin "his last hurrah, a 7.5 million-yard trek from New Orleans to Shelby, Montana, by way of Los Angeles." Finney's news story went on to explain that the money raised would help fulfill Rood's dream of equipping 50 trailers with anti-drug abuse exhibits.
The third paragraph of the story, as originally typed and transmitted by Finney, read:
"From the Atlantic to the Pacific, Rood has nudged screamers down America's interstates and rural dirt roads. For every person he has hit, he has missed millions, which is quite an accomplishment in 20 years of highway golf, the sport he invented to help solve the drug addiction problem." (emphasis supplied)
Finney then transmitted the article by computer command over telephone lines to the UPI office in Dallas, which was the regional editing center for UPI. At some point subsequent to Finney's transmission of the story from the New Orleans UPI office to Dallas its wording was altered. In one version of the article, the foregoing paragraph stated that "highway golf" was a sport invented by Rood to help solve "a drug problem." In another version of the articleand the version which is the subject of this particular litigationwhich appeared in the Houston Chronicle, the concluding sentence appeared as follows "... highway golf, the sport he invented to help solve his drug addiction problem."
Following the appearance of the story, as indicated, in the Houston Chronicle, Rood visited Finney in the UPI office in New Orleans where he objected to the news article's use of the word "his" in connection with the subject of drug addiction. Inasmuch as that word had not been used by Finney in his original article, his reaction was one of surprise. He then wrote an additional story on the subject, describing Rood's latest publicity campaign and praising his efforts to fight drug abuse in the United States. This follow-up story underscored the fact that Rood was hosting an "anti-drug addiction tournament" and that all of the proceeds on this tour would "help pay for his dream of 50 drug rehabilitation trailers."
Mr. Rood may have requested some sort of clarification when he met with Finney, although he does not remember that. Neither Rood nor his attorneys ever wrote defendants requesting a retraction of any statement made in the initial article. Consequently, there is not for the record any evidence of a formal retraction demand. Following Rood's visit to Finney, neither Rood nor his attorney contacted the news service until this lawsuit was filed in August, 1979.
In October, 1980 the defendants moved for summary judgment, which was granted by Judge Fedoroff on February 19, 1981. On April 15, 1981 the court granted Rood's motion for summary judgment with respect to UPI and Finney's reconventional demand for attorney's fees and costs, except with respect to court costs, and partially denied defendants' motion to tax costs and attorney's fees.
Because of the primacy of our concerns for freedom of the press and freedom of speech, the constitutional standards of the United States and the State of Louisiana exercise a threshold impact on this case. Thus Mr. Rood, clearly discernible as a "public figure", was required to establish with convincing certainty that Mr. Finney and United Press International acted with actual malicewhich is to say, with knowledge *3 of falsity or with reckless disregard of the truth. New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).
With regard to the practicability and efficacy of summary judgments when defamation actions are brought against news media, Louisiana has clearly recognized that such defendants are entitled to this remedy where plaintiffs clearly are unable to establish a prima facie case. The summary disposition is an "effective screening device for avoiding the unnecessary harassment of defendants by unmeritorious actions which threaten the free exercise of rights of speech and press." Mashburn v. Collin, 355 So.2d 879, 891 (La.1977). See also Shaefer v. Lynch, 406 So.2d 185, 187 (La.1981), in which the Louisiana Supreme Court held that such a defendant "is constitutionally entitled to summary dismissal of a libel suit unless plaintiff can show malice." (emphasis supplied)
As the trial judge clearly recognized, the case at bar fell well within these parameters and its disposition of the plaintiff's suit by summary judgment was proper. The judgment below is therefore affirmed.
AFFIRMED.